UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MICHAEL SANCHEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-CV-598-ZMB |
| | ) | |
| EVELYN SHARP-HEITERT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on multiple motions, including motions to dismiss from Defendants Evelyn Sharp-Heitert and Hermann London Real Estate Group ("Landlord Defendants"), Nicholas K. Meador, Meador Law Firm, LLC, and Brian Heitert, Docs. 63, 78, 81, 84, and self-represented Plaintiff Christopher Michael Sanchez's motions for leave to file a document under seal, Doc. 60, for a "Protective Order Against Witness Intimidation," Doc. 55, and to supplement his Amended Complaint, Doc. 94. Because Hermann London and Sharp-Heitert have failed to present viable arguments for dismissing Sanchez's Fair Housing Act retaliation and abuse-of-process claims, their motion to dismiss is denied in part but granted as to the remaining claims. Further, because Sanchez failed to plead sufficient facts to allege claims against the remaining Defendants, their motions to dismiss are granted. Finally, the Court denies Sanchez's miscellaneous requests for leave to file a document under seal, for a protective order, and to supplement his pleading as unwarranted under relevant law.

## BACKGROUND

### I. Factual Background[1]

In 2024, Sanchez rented a property that was managed by Hermann London, who managed the property and employed Sharp-Heitert. *See* Doc. 54 ¶¶ 6–7, 9, 12. In March of that year, Sanchez filed complaints with the U.S. Department of Housing and Urban Development (HUD) and Missouri Attorney General's Office charging the Landlord Defendants with failing to accommodate his disabilities, refusing to complete repairs on the property, and threatening to evict him. *Id.* ¶ 12. After he filed these charges, all repairs and services to his residence ceased. *Id.* ¶ 13. The City of St. Louis then initiated condemnation proceedings, during which Hermann London and Sharp-Heitert presented "fraudulent documents" and declined to acknowledge that the property was uninhabitable. *Id.* ¶ 14. Further, Heitert—a building inspector and Sharp-Heitert's brother-in-law—"[f]alsified and manipulated inspection findings to shield Sharp-Heitert and Hermann London from liability" despite "a clear conflict of interest." *Id.* ¶ 11. Ultimately, the City condemned the property. *Id.* ¶ 14.

Despite the condemnation, Sharp-Heitert and Hermann London opted to pursue a "Rent and Possession" lawsuit against Sanchez. *Id.* ¶¶ 14–15. Defendants Nicholas Meador and the Meador Law Firm represented the Landlord Defendants in these "retaliatory" proceedings and sought to collect $40,000 in fees associated with that representation. *Id.* ¶¶ 8, 19. In July of that year, Sanchez filed another round of complaints with HUD and other agencies. *Id.* ¶ 16. Sharp-Heitert responded to this charge by filing for and obtaining an order of protection against Sanchez on the grounds that Sanchez purportedly "made multiple complaints to government agencies

[1] The Court assumes that the factual allegations in Sanchez's Petition are true, as required at the motion-to-dismiss stage. *See Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025) (citation omitted).

including HUD . . . trying to have defendant[']s real-estate license revoked." *Id.*; *see also id.* ¶ 21.[2] Sharp-Heitert also published documents related to this order of protection online and harassed Sanchez on social media in an attempt to intimidate him. *Id.* ¶ 18. Sanchez further contends that the Defendants "engaged in RICO predicate acts" by performing conduct that amounts to "mail fraud, wire fraud, and extortion." *Id.* ¶ 20.

## II. Procedural Background

Sanchez filed suit in 2025, Doc. 1, but subsequently filed an Amended Complaint, *see* Doc. 54. He asserts eight claims against a mishmash of Defendants, including claims for: retaliation under the Fair Housing Act (FHA) (Count I) and Americans With Disability Act (ADA) (Count II), "Civil Rights Retaliation" under 42 U.S.C. § 1983 (Count III), a conspiracy to violate his civil rights (Count IV), a civil violation of the Racketeering Influenced and Corrupt Organizations Act (RICO) (Count V), a violation of the Missouri Merchandising Practices Act (MMPA) (Count VI), abuse of process (Count VII), and a request for declaratory and injunctive relief (Count VIII). *Id.* at 7–8. All Defendants filed motions to dismiss. Docs. 63, 78, 81, 84. Sanchez filed response briefs, Docs. 70, 89, and only Heitert filed a reply, Doc. 93.

Sanchez also has made several miscellaneous requests, including "Motion for a Protective Order and Relief Against Witness Intimidation," Doc. 55, a motion to file certain documents under seal, Doc. 60, and a motion for "leave to supplement the record and for protective relief," Doc. 94. Hermann London and Sharp-Heitert responded to the motion for a protective order. Doc. 64. The Landlord Defendants also joined Heitert in opposing the leave to supplement, Docs. 95, 97, and Sanchez filed replies, Docs. 96, 98.

[2] Sharp-Heitert also sought to extend that order of protection after Sanchez filed this lawsuit. *Id.* ¶ 21.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." The purpose of such motions "is to test the legal sufficiency of the complaint." *Ford v. R.J. Reynolds Tobacco Co.*, 553 F. Supp. 3d 693, 697 (E.D. Mo. 2021). To survive a Rule 12(b)(6) motion, the complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief" and providing notice of the grounds on which the claim rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)). Additionally, the complaint must include sufficient detail to make a claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although "[s]pecific facts are not necessary," the plaintiff must include "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Delker v. MasterCard Int'l*, 21 F.4th 1019, 1024 (8th Cir. 2022) (quotations omitted). The question is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *Id.*

At the motion-to-dismiss stage, the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Brokken*, 140 F.4th at 450 (citation omitted). However, the Court does not "presume the truth of legal conclusions." *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (citation omitted); *see also Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017) ("[T]he court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."). Ultimately, this analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

Additionally, it is well settled that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Rivera v. Bank of Am.*, 993 F.3d 1046, 1050 (8th Cir. 2021) (citation omitted). On a motion to dismiss, "the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework" so long as "the essence of an allegation is discernible." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (citation omitted). However, while "pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (collecting cases). Thus, even under this forgiving standard, the Court will not "assume facts not alleged" or "excuse the *pro se* litigant from following the Court's local rules or the Federal Rules of Civil Procedure." *Whitlock v. St. Louis Cnty.*, No. 4:21-CV-516-SEP, 2022 WL 3700915, at *2 (E.D. Mo. Aug. 26, 2022) (collecting cases).

## DISCUSSION

Of the motions pending, three are motions to dismiss filed by the Defendants and the other three are Sanchez's motions for miscellaneous relief. The Court will first address the motions to dismiss together, followed by Sanchez's remaining motions.

### I. Motions to Dismiss

Hermann London, Sharp-Heitert,[3] Meador, Meador Law Firm, and Heitert all argue that the Amended Complaint fails to state a claim. *See* Docs. 63, 78, 81. The Court will consider each of Sanchez's causes of action in turn.

---

[3] Hermann London and Sharp-Heitert indicate that Sanchez's civil RICO and MMPA claims must meet a heightened pleading standard under Federal Rule of Civil Procedure 9(b). Doc. 63-1 at 2–3, 5–6. Under that provision, a complaint "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake," with certain exceptions. *See* FED. R. CIV. P. 9(b). Because the Landlord Defendants do not identify any other causes of actions subject to this standard, the Court will apply it only to those two claims.

### *a. FHA Retaliation (Count I)*

First, Sanchez brings an FHA claim against Sharp-Heitert and Hermann London. "To state a claim for retaliation under [the FHA], a plaintiff must show that (1) he engaged in a protected activity; (2) defendants subjected him to an adverse action; and (3) a causal link exists between the two." *Burshteyn v. Cmty. Hous. Ass'n*, No. 4:19-CV-830-SRC, 2020 WL 529308, at *5 (E.D. Mo. Feb. 3, 2020) (citation omitted). In moving to dismiss the claim, the Landlord Defendants argue that Sanchez has made only "threadbare recitals" as to the first two elements and that he "does not allege facts in support of a causal connection between" his protected activity and the adverse action. *Id.* at 4. Sanchez notes that he alleged retaliatory conduct—namely the Landlord Defendants seeking an "unenforceable debt collection" and an order of protection—both of which occurred shortly after he filed his complaints to housing authorities. Doc. 70 at 2.

Although the Amended Complaint is succinct, Sanchez has pled sufficient facts to state an FHA retaliation claim. For the first element, Sanchez alleges that he filed a grievance with both HUD and the Missouri Attorney General's Office (among other agencies) about Hermann London and Sharp-Heitert's "failure to accommodate disabilities." Doc. 54 ¶ 12.[4] That allegation is sufficient for the first element, as "[r]eporting alleged discrimination to HUD may constitute protected activity under the FHA." *Burshteyn*, 2020 WL 529308, at *5. For the second element, Sanchez alleges that, "immediately following" his first set of complaints to HUD, his landlords ceased repairs and service to his rental property. Doc. 54 ¶ 13. Further, after another complaint to

[4] As a threshold issue, the Landlord Defendants contend that Sanchez "does not provide any facts that support a finding that he is entitled to protections under the FHA." Doc. 63-1 at 3. But "[u]nlawful conduct under [the FHA] includes retaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act." *Fedynich v. Stalkfleet*, 784 F. Supp. 3d 1146, 1169 (N.D. Iowa 2025) (quotation and alteration omitted). It is unclear what these Defendants meant by their single-sentence argument that cited to nothing besides the FHA, but the Court will not strain to make an argument for them—not least because they have the burden at this stage. *See KLX Energy Servs. v. Telos Indus.*, 2021 WL 9666530, at *2 (D.N.D. July 29, 2021) ("The burden is on the moving party to prove no legally cognizable claim for relief exists." (citations omitted)).

HUD, Sanchez alleges Sharp-Heitert initiated an order of protection against him. *Id.* ¶ 16. Adverse action is "conduct that a reasonable person would view as coercive, intimidating, threatening, or interfering with the exercise of [his or] her protected right under the FHA." *Fedynich*, 784 F. Supp. 3d at 1171 (quotations omitted). Drawing all inferences in Sanchez's favor, and given that the Landlord Defendants have failed to provide any authority on point, the Court finds that Sanchez has pled an adverse action. As to the last element—causal connection—Sanchez alleges both that the adverse actions occurred soon after his protected activity and that Sharp-Heitert herself noted the complaints to HUD in her petition for an order of protection, which is sufficient to indicate a causal connection. Doc. 54 ¶¶ 13, 16. *See Oxford House v. City of Baton Rouge*, 932 F. Supp. 2d 683, 701 (M.D. La. 2013) ("[A] causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." (quotation omitted and collecting cases)). Especially in light of the liberal construction owed to pro se plaintiffs, Sanchez has pled sufficient facts for his FHA retaliation claim to proceed.

***b. Abuse of Process (Count VII)***

Sanchez's next claim is against Sharp-Heitert, Hermann London, Meador, and Meador Law Firm for abuse of process.[5] While the arguments raised by the Landlord Defendants are unavailing, Meador and Meador Law Firm's arguments warrant dismissal of this claim as to them.

First, Hermann London and Sharp-Heitert's arguments are unpersuasive. To state a claim for abuse of process, Sanchez must allege "(1) an illegal, improper, perverted use of process, (2) done for an improper purpose, (3) resulting in damage." *Impey v. Hart*, 471 S.W.3d 776, 780 (Mo. Ct. App. 2015). The Landlord Defendants argue that Sanchez has failed to allege "post-issuance

---

[5] It does not appear that Sanchez even intended to bring an abuse-of-process claim against Heitert. None of the allegations listed in the operative complaint link activity by Heitert to this claim. *See* Doc. 54 at 8. Moreover, Heitert made the same observation, Doc. 79 at 9, and Sanchez did not respond, *see* Doc. 89 at 7–13. As such, the Court will not construe the Amended Complaint as advancing this claim against Heitert.

perversion of process." Doc. 63-1 at 7. But that argument fails for two reasons. First, the initiation of a suit can, in some instances, be sufficient to state a claim for abuse of process. *See Altman v. Altman*, No. 4:25-CV-17-ZMB, 2026 WL 785023, at *5–6 (E.D. Mo. Mar. 20, 2026). Second, and even if "post-issuance perversion" were required, Sanchez has pled that the process issued against him was used for harassment. *See* Doc. 54 ¶ 18 ("On multiple occasions, Defendant Sharp-Heitert has posted or shared confidential court filings online, harassed Plaintiff on social media, and attempted to intimidate him publicly."); *id.* ¶ 20 (alleging that the "debt-collection attempts" were used to "harass" Sanchez). Thus, Hermann London and Sharp-Heitert's argument falls short at this stage.

However, Meador and Meador Law Firm present meritorious reasons for dismissing this claim. These Defendants note that Sanchez fails to show "how or why the prior proceedings were unwarranted" or to allege that Meador or Meador Law Firm misused process for an improper purpose. Doc. 81-1 at 9. Although Sanchez claims that Meador "added over $40,000 in attorney fees . . . in retaliation and without legal basis," Doc. 54 ¶ 19, Sanchez did not plausibly identify a retaliatory purpose as to these Defendants. Simply put, an abuse of process may arise "when a party employs legal process in a manner technically correct, but for a wrongful and malicious purpose to attain an unjustifiable end." *Schlafly v. Cori*, 647 S.W.3d 570, 574 (Mo. banc 2022). But because Sanchez has not alleged such a motive for these Defendants, dismissal is warranted.

***c. ADA Retaliation (Count II)***

Next, Hermann London and Sharp-Heitert argue they cannot be liable for ADA retaliation for various reasons. Doc. 63-1 at 4. Pertinent here is their argument that "the ADA applies to places of public accommodation as opposed to private dwellings." *Id.* As Sanchez's "claims generally surround his rent and possession of a home, the ADA would not legally apply." *Id.* Sanchez did not specifically address this argument in his response. Doc. 70. *But see* Doc. 89 at 9 (responding to Heitert's motion by noting that he made an "ADA accommodation request" as protected activity).

Relevant precedent supports Defendants' argument that the ADA does not apply to long-term rental properties like apartments. *See Felknor v. Tallow Wood Apartments*, 2009 WL 3230607 (W.D. La. Sept. 28, 2009) (noting that the text of the ADA supports a finding that "other places of lodging" is limited to short-term transient lodging); *see also Phibbs v. Am. Prop. Mgmt.*, 2008 WL 746977, at *3 (D. Utah 2008) ("Facially, the statute does not include a private residence, such as a residential home or apartment."). And because Sanchez did not respond to Hermann London and Sharp-Heitert's arguments or provide contrary authority, the Court follows this approach. As such, the Court dismisses Sanchez's ADA retaliation claim.

***d. Section 1983 (Count III)***

Next, Heitert seeks dismissal of Sanchez's civil-rights claims under section 1983. Heitert claims he is entitled to qualified immunity and that Sanchez failed to plausibly allege any constitutional violation. Doc. 79 at 2–7. Sanchez asserts that Heitert's actions amount to retaliation for his exercise of First Amendment rights and selective enforcement in violation of the Equal Protection Clause. Doc. 89 at 7. In addition to several unpled allegations that the Court cannot consider,[6] Sanchez supports his First Amendment retaliation claim by noting that Heitert condemned his rental property shortly after he made his complaints to housing authorities. *See* Doc. 89 at 9. Further, Sanchez argues that his selective-enforcement claim is supported because he was singled out due to Heitert's relationship with Sharp-Heitert. *Id.* at 11. He falls short on both fronts.

First, Sanchez has failed to plead a First Amendment retaliation claim. To do so, Sanchez had to allege: (1) that he engaged in constitutionally protected activity; (2) that Heitert caused an injury to him that would chill a person of ordinary firmness from continuing in that protected activity; and (3) a causal connection between Heitert's retaliatory animus and Sanchez's injury.

[6] Heitert contends that Sanchez's arguments are doomed because his opposition brief adds "legal theories" and facts not pled in his complaint. Doc. 93 at 1–2. Heitert is wrong that Sanchez was required to plead a legal theory. *See In re SuperValu, Inc.*, 870 F.3d 763, 772 (8th Cir. 2017) ("[I]t is unnecessary to set out a legal theory for the plaintiff's claim for relief in a pleading." (quotation omitted)). But it is true that "a complaint may not be amended by the briefs in opposition to a motion to dismiss." *See Al-Saadoon v. Barr*, 973 F.3d 794, 805 (8th Cir. 2020) (citation omitted)). As such, the Court will consider Sanchez's stated legal theories but not the new factual allegations.

*Nieters v. Holtan*, 83 F.4th 1099, 1110 (8th Cir. 2023). To establish a causal connection, Sanchez "must show the protected activity was a but-for cause of the adverse action, in that it would not have been taken absent [a] retaliatory motive." *Sanimax USA v. City of S. St. Paul*, 95 F.4th 551, 559 (8th Cir. 2024) (quotations omitted). Assuming that the protected activity was making his complaints to housing authorities, Sanchez has not alleged a causal connection. The Amended Complaint states only that Heitert "[f]alsified and manipulated inspection findings to shield Sharp-Heitert and Hermann London from liability" and "abused his position to falsify inspections and retaliate against Plaintiff." Doc. 54 at 5, 7. Those allegations, however, do not allege a causal connection between protected activity and Heitert's actions. In fact, the allegations suggest familial bias as opposed to retaliatory animus as the "but-for" cause. Thus, Sanchez's First Amendment claim fails.

Sanchez also fails to state a selective-enforcement claim. Here, Sanchez needed to show that Heitert "exercised [his] discretion to enforce the laws on account of [Sanchez's] race, nationality, or other suspect classification and that enforcement of the law had a discriminatory effect and purpose." *Parada v. Anoka Cnty.*, 481 F. Supp. 3d 888, 899 (D. Minn. 2020) (citation omitted). Sanchez's Amended Complaint is bereft of any allegation that he was a member of a protected class or that Heitert's actions were motivated by membership in a protected class. As such, Sanchez has not pled any section 1983 claim against Heitert.[7]

***e. Civil Conspiracy Under Section 1983 (Count IV)***

With the dismissal of his section 1983 claim, Sanchez's civil-conspiracy claim fails. A plaintiff must "prove a deprivation of a constitutional right . . . to prevail on a § 1983 conspiracy claim." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008). As such, this count must be dismissed as well.

[7] Sanchez suggests that he can bring a section 1983 claim against the remaining Defendants because "private actors invoking state judicial processes to effectuate [constitutional] deprivations may be liable" under that statute. Doc. 89 at 3 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)). But the *Lugar* Court "held that a private party's mere invocation of state legal procedures does not constitute state action." *Youngblood v. Hy-Vee Food Stores*, 266 F.3d 851, 855 (8th Cir. 2001) (citation omitted). Because Sanchez does not appear to attribute any other "state action" to the remaining Defendants, *see* Doc. 54 ¶¶ 14–16, 19, he has not pled a viable section 1983 claim against them.

***f. Civil RICO (Count V)***

Sanchez's civil RICO claim is equally unavailing.[8] Defendants argue that Sanchez has not sufficiently pled the facts necessary for a civil-RICO claim under Rule 9(b). Doc. 63-1 at 5–6; Doc. 81-1 at 6–7. Sanchez did not directly respond to these arguments. *See* Docs. 70, 89.

To state a claim for a civil RICO violation, Sanchez must allege "that the [Defendants] engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *H&Q Props. v. Doll*, 793 F.3d 852, 856 (8th Cir. 2015) (quotation omitted). To constitute a pattern of racketeering activity, a plaintiff must prove two or more instances of activity that would be indictable crimes, including wire or mail fraud, murder, kidnapping, bribery, extortion, theft, or violations of the Controlled Substances Act. *See* 18 U.S.C. § 1961(1), (5). Additionally, the claim must be pled "with particularity under Rule 9(b)" and meet this "heightened pleading standard" by stating "the who, what, when, where, and how" of the elements of the racketeering activity. *Crest Const. II v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011). This "higher degree of notice" is designed "to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *U.S. ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003).

Particularly in light of the heightened pleading standard, Sanchez has not alleged a RICO claim. While the Court can infer who was a member of this purported enterprise, Sanchez has not provided sufficient detail to explain when or how the enterprise was formed. And even overlooking the conclusory allegation of wire and mail fraud as racketeering activity, *see* Doc. 54 ¶ 10, Sanchez fails to explain when a wire or the mail was used to perpetrate the fraud. *See Crest Cost. II*, 660 F.3d at 358 (affirming dismissal of a RICO claim where "the Complaint fail[ed] to specify a single date with respect to [wire fraud]"). As such, his RICO claim is insufficient and must be dismissed.

[8] It appears that Sanchez omitted Heitert from this count. *See* Doc. 54 at 8 ("Defendants Sharp-Heitert, Meador, Hermann London, and Meador Law Firm engaged in a pattern of racketeering activity . . . ."). But even if the Amended Complaint can be read as including Heitert, *see id.* ¶ 20 ("All Defendants have engaged in RICO predicate acts . . . ."), his claim would be deficient for the reasons that follow.

***g. MMPA (Count VI)***

Similar to his civil RICO claim, Sanchez's MMPA claim is insufficient. As relevant here, Defendants argue that Sanchez has failed to plead an ascertainable loss under the MMPA with the specificity required by Rule 9(b). Doc. 63-1 at 6-8; Doc. 81-1 at 7-8. Sanchez responds that he has pled ascertainable losses, including losses he incurred from litigating his housing dispute. Doc. 89 at 4. But Sanchez's defense is unavailing.

To recover under the MMPA, a plaintiff must allege he "(1) purchased merchandise . . . from [the defendant]; (2) for personal, family or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under the MMPA." *Goldsmith v. Lee Enters.*, 57 F.4th 608, 615 (8th Cir. 2023) (alterations and citation omitted). To determine whether a plaintiff suffered an ascertainable loss, courts apply the "benefit of the bargain" rule, which "awards a prevailing party the difference between the value of the product as represented and the actual value of the product as received." *Hennessey v. Cap, Inc.*, 86 F.4th 823, 827 (8th Cir. 2023) (quotation omitted). Further, MMPA claims brought in federal court must meet the heightened pleading standards of Rule 9(b). *See id.*

Here, Sanchez has not sufficiently pled what ascertainable loss he suffered. Nothing in the Amended Complaint indicates a difference in value from what he received. Instead, Sanchez points to attorney fees, the loss incurred after an unfavorable judgment, "[l]itigation costs," and the fact he was displaced from his home. Doc. 89 at 4. But that is not enough to establish an ascertainable loss. Indeed, Sanchez must specify "not only the value represented, but also the actual value of the product as received in order to establish ascertainable loss." *See Hennessey*, 86 F.4th at 830. While he has alleged harm suffered at the hands of the Defendants, that is not the same as an "ascertainable loss" under the MMPA. As such, the Court dismisses the claim without prejudice.

***h. Declaratory and Injunctive Relief (Count VIII)***

Finally, all Defendants seek to dismiss the claim for declaratory or injunctive relief because they are not separate causes of action and due to the purported failure of the underlying claims. Doc. 63-1 at 7; Doc. 79 at 9; Doc. 81-1 at 9–10. True, declaratory or injunctive relief is not an independent cause of action, *see Salau v. Denton*, 139 F. Supp. 3d 989, 1012 (W.D. Mo. 2015), and therefore cannot be used to keep Meader, Meador Law Firm, or Heitert in this case. But the fact that Sanchez has remaining claims against Hermann London and Sharp-Heitert means his prayer for injunctive relief survives as to them. And while the Landlord Defendants claim that the Court "does not have the authority to issue the type of injunctive relief sought," Doc. 63-1 at 8, a challenge to the scope of the ultimate relief Sanchez seeks is not properly made in a Rule 12(b)(6) motion, *see Affiliated Foods Midwest Coop. v. Supervalu*, 2017 WL 2222916, at *2 (D. Neb. May 19, 2017) (collecting cases). While Sharp-Heitert and Hermann London may be correct that the Court cannot grant some of the relief sought, the Court need not address that issue at this juncture.

**II. Motion for Leave to File Under Seal**

In addition to Defendants' motions, Sanchez moves to file certain exhibits containing personal identifying information under seal. Doc. 60. However, it appears the only thing that Sanchez seeks to have sealed is Sharp-Heitert's name. Doc. 69-1. While the Court appreciates Sanchez's caution, that material does not appear to be so sensitive as to warrant sealing from the public. *See* L.R. E.D. MO. 13.05(B)(1). As such, the Court denies Sanchez's motion to seal.

**III. Motion for a Protective Order**

Sanchez also moves for a protective order to "prohibit[] Defendants from using state court processes or other litigation tactics to intimidate, harass, or retaliate against" him. Doc. 55 at 2. However, a protective order is something a court may issue only to ensure the protection of certain information during discovery. *See* FED. R. CIV. P. 26(c); *see also Woodmen of World Life Ins. Soc'y v. U.S. Bank Nat. Ass'n*, 2011 WL 1584027, at *4 (D. Neb. Apr. 26, 2011) (describing the standard

for protective orders). Because Sanchez's requested relief does not relate to discovery, the Court denies his motion for a protective order.[9]

**IV. Motion to Supplement**

Finally, Sanchez moved to supplement his Amended Complaint,[10] Doc. 94 at 1–9, which some Defendants oppose, *see* Docs. 95, 97. A party may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened *after* the date of the pleading to be supplemented." FED. R. CIV. P. 15(d) (emphasis added). Defendants note that none of the events Sanchez alleges occurred before the date he filed his Amended Complaint. *See* Doc. 95 at 1–2. Sanchez does not dispute that characterization. *See* Doc. 96 at 2. Having reviewed the new allegations, *see* Doc. 94 at 1–4, the Court agrees with Defendants that all events occurred before the Amended Complaint was filed, making the motion to supplement procedurally defective. *See Zavala v. Waterman*, 2018 WL 6592665, at *1 (W.D. Wisc. Dec. 14, 2018) (denying a motion to supplement where the new allegations occurred "well before he filed his [operative] complaint").

Sanchez also suggests that the Court could construe his defective motion to supplement as a motion to file another amended complaint. Doc. 96 at 3. But that motion also would be procedurally defective, as Sanchez failed to attach a redlined copy of the amended complaint as required. *See* E.D. MO. L.R. 4.07. And if Sanchez wants to amend his complaint again, he must address why "justice so requires." *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709 (8th Cir. 2008) (citing FED. R. CIV. P. 15(a)(2)). As such, the Court denies the motion.

[9] Based on the language of his motion, Sanchez might have intended to file for a preliminary injunction. *See* Doc. 55 at 2 (asking the Court to "enter a protective order prohibiting Defendants from using state-court processes" to retaliate against him). But it is unlikely the Court could afford him that relief even if he had requested it. *See Lehr v. Nike IHM, Inc*, No. 4:19-CV-942-RLW, 2020 WL 5038716, at *3 (E.D. Mo. Aug. 25, 2020) ("[F]ederal courts [are prohibited] from enjoining proceedings in state courts unless [an exception applies] . . . even where the injunction technically would be directed at a litigant instead of the state court proceeding itself." (citation omitted)).

[10] In this motion, Sanchez makes other requests, including for a protective order. *See* Doc. 94 at 9–11, most of which are precluded for the reasons above. Sanchez also addresses discovery. *Id.* at 10–11. Because the case will now move on to discovery, the request for limited discovery is moot. And while the Court declines to enter a formal preservation order, counsel should be mindful of the responsibility to preserve any discoverable materials. Finally, Sanchez asks the Court to take judicial notice of various public dockets. *See id.* at 11–12. It is not clear why Sanchez requests the Court take judicial notice of the listed materials, and as such, the Court will decline to do so at this time.

## CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants Hermann London Real Estate Group and Evelyn Sharp-Heitert's [63] Motion to Dismiss. Specifically, while Plaintiff Christopher Michael Sanchez states a claim for Fair Housing Act retaliation and abuse of process, the Court **DISMISSES** the remaining counts against Hermann London and Sharp-Heitert without prejudice. Further, the Court **GRANTS** Defendants Brian Heitert, Nicholas K. Meador, and Meador Law Firm, LLC's [78] [81] Motions to Dismiss and **DISMISSES** them from this case without prejudice. Finally, the Court also **DENIES** Sanchez's [60] Motion for Leave to File under Seal and [55] Motion for a Protective Order and [94] Motion for Leave to Supplement the Record.

So ordered this 18th day of August.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE